**KUNTZ v. PARTRIDGE et al.**

No. 7434.

Supreme Court of North Dakota.

Aug. 20, 1954.

Rehearing Denied Sept. 22, 1954.

J. K. Murray, Bismarck, for plaintiff and appellant.

Cox, Cox, Pearce & Engebretson, Bismarck, for defendants and respondents.

MORRIS, Chief Justice.

This is an appeal by the plaintiff and appellant from an order denying a motion for a new trial. The complaint upon which the action was tried seeks to recover $6,800 actual damages and $5,000 punitive damages upon a hybrid cause of action partaking of both trespass and conversion. The property involved consists of a four room dwelling house situated on Lot 5, Block 2 of the East Side Addition to the city of Coleharbor and certain personal property contained therein.

It is specifically alleged:

"That on or about the 10th day of October, 1951 the defendants and the defendant George Chilton at the instigation of the other defendants above named did, while the plaintiff and her husband were absent from their home and with the intent to cheat and defraud the plaintiff and her husband out of her said home, maliciously raise said dwelling house from its foundation on said Lot 5 and did wrongfully and unlawfully steal, take and carry away said dwelling house with its contents, and did move said dwelling house onto another lot, thereby depriving the plaintiff of the possession of same and depriving her and her husband and family of a home; that at said time plaintiff's furniture, cooking utensils, beds, bedding, clothing, and other personal property of the plaintiff, was then and there situated in said home; that same was of the reasonable market value of $600.00; that there was also situated in said dwelling house property of the plaintiff's husband, Frank Kuntz, of the reasonable market value of at least $200.00; that the said Frank Kuntz has assigned, sold and delivered his said personal property to the plaintiff and his cause of action

against the defendants by reason of the taking of his personal property wrongfully and unlawfully, and that the plaintiff is now the owner of the said personal property of the said Frank Kuntz and his said cause of action."

Defendants deny generally the allegations of the complaint and further allege:

"that the dwelling referred to in plaintiff's complaint was duly and legally sold as personal property by the Sheriff of McLean County, North Dakota, at a judicial sale on the 10th day of August, 1951, pursuant to a writ of special execution issued out of the District Court of McLean County, North Dakota, on the 26th day of July, 1951, under the authority of a judgment entered and docketed the 25th day of July, 1951, in an action in the District Court of McLean County, North Dakota, in which George Bellamy Partridge and Thomas M. Partridge, doing business as Dakota Lumber Company, Underwood, North Dakota, were plaintiffs, and Frank Kuntz and C. S. Murphy were defendants."

The defendants also alleged that the plaintiff had personal knowledge of the judicial sale and took no action in opposition thereto and is estopped from attacking its validity, and that any title of the plaintiff was acquired subsequent to the sale and removal of the building and with knowledge thereof and is therefore subject to the sale.

The jury returned a verdict in favor of the plaintiff for $500. The court submitted to the jury two special interrogatories, which they answered as follows:

"Question: Members of the jury, in the event you find for the plaintiff, how much damages do you find for the plaintiff for the severance of the house from the land and the removal thereof?

"Answer: $ none"

"Question: Members of the jury, in the event you find for the plaintiff for the wrongful conversion of her personal property belongings and find for her, the plaintiff, on the conversion of the property of Frank Kuntz, then how much damages do you find for the plaintiff for the wrongful conversion of her personal property belongings and the personal property belongings of Frank Kuntz?

"Answer: $500.00"

No judgment was entered on the verdict. The plaintiff moved for a new trial and specified seventeen grounds therefor, together with seven specifications of the insufficiency of the evidence.

On November 16, 1953, the trial court entered its order denying plaintiff's motion for a new trial, from which the plaintiff appeals to this court. The denial of this motion is specified as error.

The plaintiff, Alma Kuntz, and her husband, Frank Kuntz, acquired title to Lot 5, Block 2, by virtue of a warranty deed from C. S. Murphy and his wife, dated June 20, 1951, and recorded in the office of the register of deeds of McLean County on July 5, 1951. On September 12, 1951, Frank Kuntz conveyed his interest in Lot 5 to his wife Alma Kuntz by quitclaim deed, which was recorded in the office of the register of deeds September 26, 1951.

In September 1951 the defendant Thomas M. Partridge sold the house involved in this lawsuit, which was then located on Lot 5, Block 2, to the defendant George Chilton. He attempted to transfer title by giving Chilton a bill of sale. Chilton moved the house to the adjoining Lot 4 and a few days later again moved the house to another location about a block distant. At the time the house was moved the plaintiff and her husband were absent from Coleharbor. The house contained the personal property that is included in this action. The plaintiff contends that this removal was unlawful and constituted a trespass upon Lot 5 and a conversion of her personal property

and that of her husband. Before this action was instituted Frank Kuntz assigned to his wife by an instrument in writing his cause of action for the conversion of his property.

The defense centers around a mechanic's lien, the foreclosure thereof, the entry of judgment by default, and a sale by the sheriff of McLean County to George Bellamy Partridge and Thomas M. Partridge, doing business as Dakota Lumber Company, pursuant to a special execution of "That certain residence situated in the County of McLean, North Dakota, located in Lot four (4), Block two (2), East Side Addition, Coleharbor, North Dakota."

Before discussing the details in this procedure we consider pertinent statutes, all of which are found in Chapter 35–12, NDRC 1943 on mechanics' liens. Section 35–1203, NDRC 1943 provides, in part, that one who furnishes materials for the improvement or erection of a building or other structure under contract with the owner of the land or with the consent of the owner, upon complying with the provisions of this chapter, shall be entitled to a lien upon the building and upon the land on which the improvement is situated. Section 35–1201 provides that an owner means a person for whose immediate use and benefit the building or improvement is made having capacity to contract.

Section 35–1204, NDRC 1943 provides the requirements for procuring a mechanic's lien, among which are that the person entitled to the lien shall file with the clerk of the district court a notice in writing setting forth:

"a. The name of the person in possession of the land;

"b. The description of the property to be charged with the lien;

"c. The date of the contract; and

"d. That a mechanic's lien against the building, improvement, or premises will be perfected according to law unless the account shall have been paid."

Section 35–1210 requires the lien claimant to

"file with the clerk of the district court of the county in which the property to be charged with the lien is situated, within ninety days after all the things aforesaid shall have been furnished or the labor done, a true account of the demand due him after allowing all credits and containing a correct description of the property to be charged with a lien, which account shall be verified by affidavit."

The defendants contend that the Dakota Lumber Company had a valid lien on the house located on Lot 5, but not on the lot itself, under the provisions of Section 35–1218, NDRC 1943, which reads as follows:

"In addition to the lien provided by this chapter, when material is furnished or labor performed in the erection or construction of an original, complete, and independent building, structure, or improvement, whether the same is placed upon a foundation or not, the lien shall attach to the building or improvement in preference to any prior title, claim, lien, encumbrance, or mortgage upon the land upon which the building, erection, or improvement is erected. Upon the foreclosure of the lien, the building or improvement may be sold separately from the land and may be removed from the land within thirty days after the sale. The sale and removal of a structure or improvement separately from the land shall operate as a full satisfaction and discharge of the lien upon the real estate. At the time the material is furnished for such improvement, the seller shall notify the purchaser by delivering to him a written notice stating that the seller claims the right to foreclose the lien under the laws of the state; and in the event that there is a default in payment for the improvement, to remove the building from the real estate upon which it is placed regardless of whether or not said building is placed upon a foundation."

Over plaintiff's strenuous objections, the overruling of which the plaintiff specifies as error on this appeal, the defendants were permitted to introduce in evidence the record of the mechanic's lien and the procedure had thereunder, culminating in the sheriff's sale. These proceedings the plaintiff contends are wholly immaterial to **a** trespass on Lot 5, Block 2.

April 19, 1951, the Dakota Lumber Company filed in the office of the clerk of the district court of McLean County a mechanic's lien notice reciting that on June 6, 1950, it had entered into a contract with Frank Kuntz to "Supply material for house upon the following described real estate, to-wit: Lot 4 Block II, East Side Addition to Coleharbor." On May 3, 1951, an instrument designated "Mechanic's Lien," to which was attached an itemized statement of building material, was filed in the office of the clerk of the district court. This instrument in part recited:

"T. M. Partridge being duly sworn says that he is a Partner of Dakota Lumber Co. doing business at Underwood North Dakota; that on the 6 day of June 1950, said Frank Kuntz made a contract with Dakota Lumber Co. to furnish building Materials for a certain House situated upon the following described land of which the said Frank Kuntz then and is now the Owner to-wit: Lot 4 Block 2 East Side Addition to Coleharbor N. D. * * * and that there is due and owing thereon to said Dakota Lumber Co. after allowing all credits the sum of Three Hundred Seventy and 08/100 Dollars, for which a Mechanic's Lien is hereby claimed, under Chapter 35–12 of the North Dakota Revised Code of 1943, in favor of the said Dakota Lumber Co. upon said House including the land hereinbefore described, upon which the same is situated."

The material described in the lien was used in building the house on Lot 5 and constitutes between one-third and one-half of the material that went into the structure. Why the house was built on Lot 5

instead of Lot 4 which Frank Kuntz had purchased on contract from C. S. Murphy is not directly explained, but the inference is that the house was located on Lot 5 by mistake.

At this point we take notice of the defendants' contention that the lien in question is claimed only upon the house as separate and apart from the lot on which it stood. This contention is clearly untenable. Section 35–1218, NDRC 1943 upon which the defendants rely requires that at the time the material is furnished the seller shall notify the purchaser by a written notice stating that the seller claims that in event of default the seller may remove the building from the real estate upon which it is placed regardless of whether or not the building is upon a foundation. Not only did the seller in this case fail to comply with the statute by giving the required notice but the lien which we have above quoted specifically provides that the Dakota Lumber Company claims a lien upon the house and the land upon which it is situated.

On May 21, 1951, the Dakota Lumber Company instituted an action against Frank Kuntz and C. S. Murphy for the foreclosure of the lien filed in the office of the clerk of the district court on the third day of May, 1951, and there for the first time it appears that the lien is not being asserted against the land. The complaint, among other things, states:

"That the Plaintiffs make no personal claim against the Defendant, C. S. Murphy, and admit that the said C. S. Murphy is the owner of Lot four (4), Block Two (2), East side Addition to Coleharbor, McLean County, North Dakota; that this action is brought for the sole purpose of foreclosing a lien of the Plaintiffs upon the building located thereon and not for the purpose of making any claim against the said C. S. Murphy, or on the land on which the building is located."

It may be noted that the structure described in the lien is a "house" while the

complaint uses the word "building." The complaint prays

"that said building located upon Lot 4, Block 2 of East Side Addition to Coleharbor, North Dakota, be sold under a decree of this Court according to law to satisfy the amount of the lien together with costs of this action; * * *."

The defendants in the action to foreclose defaulted and the attorney for the plaintiffs filed an affidavit of default and an affidavit of proof. In the latter he states:

"That affiant has read the allegations in the complaint in the above entitled matter and on information and belief, he states that all the allegations therein contained are true."

On the twenty-fourth day of July, 1951, the court made its findings of fact, conclusions of law, and order for judgment. In the findings of fact it is recited that all the allegations in the complaint are true. In the conclusions of law it is provided

"that the Plaintiff be entitled to a foreclosure on that certain building located upon Lot four (4), Block Two (2), East Side Addition, Coleharbor, North Dakota, and that the same be sold according to law to satisfy the amount of the lien, together with the costs of this action * * *."

On the twenty-fifth day of July, 1951, there was entered a judgment and decree of foreclosure of mechanic's lien directing a sale of the property and specifically providing

"That the property directed to be sold by this decree is that certain frame residence situated in the county of McLean and State of North Dakota located on Lot four (4), Block Two (2), East Side Addition, Coleharbor, North Dakota."

It may be here noted that the "building" has now become a "frame residence."

On July 26, 1951, the clerk of the district court of McLean County issued a special execution directing the sheriff to sell

"That certain residence situated in the County of McLean, North Dakota, Located in Lot four (4), Block two (2), East Side Addition, Coleharbor, North Dakota."

The sheriff caused a notice of sale of personal property to be published on August 2 and August 9, 1951, describing the property as it was described in the special execution. The sale was to be held and was held on August 10, 1951, at 10 a. m. at the front door of the courthouse in the city of Washburn. The sheriff filed a return properly setting forth the steps that he had taken and reciting that he had sold the property to George Bellamy Partridge and Thomas M. Partridge, doing business as Dakota Lumber Company. The amount for which the property sold was $360.63, which after deducting the costs of sale left $349.18 to apply on the judgment.

On August 20, 1951, the Dakota Lumber Company caused to be served on Alma Kuntz personally and on Frank Kuntz by leaving a copy with his wife at his place of residence the following notice:

"You are hereby notified that the undersigned is owner of building located on Lot No. 4 Block II East Side Addition of Coleharbor. That you have no legal authority to occupy said premises.

"You and each are hereby notified to vacate and surrender said premises to the undersigned 3 days after service of this notice upon you.

"You and each are hereby notified that in event of your failure to vacate said premises in 3 days after service up on you that further proceedings to evict you from said premises will be taken."

The facts pertaining to the history of the title to Lots 4 and 5, Block 2 are pertinent to the contentions of the parties. According to the testimony of C. S. Mur-

phy, a real estate dealer of Coleharbor, in the summer of 1950 he made arrangements to sell Lot 4, Block 2 to Frank Kuntz, to whom he later delivered a deed. The consideration was $75. This deed was executed in the early part of 1951 but was never recorded. Murphy also sold Lot 5 to another man to whom no deed to Lot 5 was issued. After the delivery of the deed to Lot 4 to Kuntz, he asked Murphy to give him a deed to Lot 5 because he and the man who had bought Lot 5 agreed to exchange property. Murphy complied with this request and executed the deed of June 20, 1951, to Frank and Alma Kuntz, to which we have already referred. Kuntz returned to Murphy the unrecorded deed to Lot 4 and Murphy tore it up. This act did not retransfer the title to Murphy. Section 47–0910, NDRC 1943. Russell v. Meyer, 7 N.D. 335, 75 N.W. 262, 47 L.R.A. 637; Brugman v. Charlson, 44 N.D. 114, 171 N.W. 882, 4 A.L.R. 400. Kuntz had built a small building on Lot 4, 6 x 10 x 7 feet. This building was used by the Kuntzes for storage and is generally referred to in the testimony as "the shack." When cross-examined regarding her knowledge of the proceedings to foreclose the mechanic's lien against her husband, the plaintiff testified that they had a building on Lot 4 and that was the one she thought was being foreclosed on. That testimony is not improbable when we consider that the complaint asked for the foreclosure of a lien "upon the building" located on Lot 4. Even the notice to vacate served on Frank and Alma Kuntz after the sale describes the structure as a "building located on Lot No. 4." The Kuntzes were then living on and occupying Lot 5, which they owned under a recorded deed. Nevertheless, the notice required them to vacate and surrender the premises, which they obviously under no circumstances were required to do if the notice was intended to apply to Lot 5.

■ A mechanic's lien is purely statutory. Its existence and extent are defined and limited by legislative enactments. Dunham Lumber Co. v. Gresz, 71 N.D. 491, 2 N.W.2d 175, 141 A.L.R. 60. The procedure prescribed by these enactments must be substantially followed or the lien does not exist. Stoltze v. Hurd, 20 N.D. 412, 128 N.W. 115, 30 L.R.A.,N.S., 1219, Ann.Cas.1912C, 871; Austad v. Dreier, 57 N.D. 224, 221 N.W. 1. The statute requires among other things that no person furnishing material shall be entitled to a lien unless he files with the clerk of the district court a notice in writing, which must contain a description of the property to be charged with the lien. Section 35–1204, NDRC 1943. The lien filed in this case states that the Dakota Lumber Company claims a lien on a certain house situated on Lot 4, Block 2, including the land upon which it is situated. The defendants now contend that this description is sufficient to give the Dakota Lumber Company a valid lien on the house situated on Lot 5, Block 2, but not upon the lot on which it is situated. The description cannot be said to be ambiguous. It is a complete and accurate description of a lot in the city of Coleharbor. In J. J. Howe & Co. v. Smith, 6 N.D. 432, 71 N.W. 552, 553, it is said:

"The case before us is not a case in which the description which does not accurately describe the land sought to be charged with the lien does in fact describe another piece of real property with technical exactness. In such a case there is no ambiguity to be cleared up by a resort to extrinsic facts. It is a case where the lienor has precluded all possibility of his claim that he intended to describe the land he is seeking to subject to a lien, because he has explicitly described another parcel of real estate, and because no reformation of the description is in such cases permitted. When one lot is designated in the lien in terms which point it out with absolute precision, no room is left to inquire whether another lot was intended."

The case now before this court is somewhat like that considered by the Supreme Court of Montana in Goodrich Lumber Co. v. Davie, 13 Mont. 76, 32 P. 282. That action was brought to enforce a lien for building materials supplied by the plaintiff

for the construction of "that certain frame building and outhouses" located on Lot 14 in Block 200. These structures were actually placed on lot 13 which was owned by the defendant against whom the lien was filed. It was there contended that the description of the buildings was sufficient even though the lot number was wrong. The court said:

"In the description under consideration there is no error or mistake. 'Lot 14 in block 200' is certain, definite, and unmistakable. By it one would identify that piece of ground as officially platted. By it he would not identify lot 13. A description of lot 14 cannot sustain a lien for materials furnished and used in the erection of a building on lot 13."

■■ The defendants cite MacPherson v. Crum, 43 N.D. 219, 174 N.W. 751, which reiterates the rule of J. J. Howe & Co. v. Smith, supra, that

"Any description in a mechanic's lien statement which will enable a party familiar with the locality to identify the property with reasonable certainty is sufficient as between the parties."

In that case the lien statement gave the correct lot number upon which the house for which the materials were furnished was located. There was also another house on the same lot. The plaintiff was permitted to show which house was the one for which the materials were furnished and upon which the lien was claimed. The right to foreclose the lien upon that house was sustained. No misdescription of the lot was involved. That case is in point only to the extent that it states the general rule as quoted above. We can reach no other conclusion but that the Dakota Lumber Company never obtained a lien upon any structure on Lot 5, Block 2. See also Smith v. Bowder, 31 S.D. 607, 141 N.W. 786.

■ The defendants contend that the present action is a collateral attack on the judgment rendered in the action to fore-

close the lien. Citing Bovey-Shute & Jackson v. Odegaard, 53 N.D. 871, 208 N.W. 111. The rule laid down in that case is that

"When a mechanic's lien has been foreclosed by action, and title acquired thereunder, the judgment cannot be questioned in a collateral proceeding."

It was further held in that case that one who held title to real estate evidenced by unrecorded deeds and who was not made a party to the action to foreclose the mechanic's lien but had actual knowledge of the lien and the pendency of the action was bound by the judgment. In that case the mechanic's lien was valid and the proceedings foreclosing it were valid. There was no misdescription of the property. The undisclosed owner who, with knowledge of the lien and the foreclosure proceedings, stood by without making a disclosure of his interest in the property was held bound by the judgment. His attempted attack on the judgment was held to be collateral and unavailable to him. There is no connection between that situation and the one before us. In this case the Dakota Lumber Company never had a lien on the house situated on Lot 5. When it undertook to foreclose its lien, its complaint showed that it sought to foreclose on a building on Lot 4. There was a building on Lot 4 that had been put there by the Kuntzes. The description of the premises as being Lot 4 persists throughout all of the proceedings, including the sale and the notice to vacate. The plaintiff in this action makes no claim with respect to Lot 4 but insists that none of the proceedings apply to the house on Lot 5. The defendants removed the house from Lot 5, and for damages resulting therefrom this suit is brought. It is clearly not a collateral attack on the judgment foreclosing the mechanic's lien.

■ The validity of the defendants' act in removing the house from Lot 5 must rest on the title the Dakota Lumber Company acquired at the sheriff's sale. Regardless of the invalidity of all of the preceding proceedings, the sale itself is

completely void as to any purported vesting of title in the house on Lot 5 in the Dakota Lumber Company.

"* * * since the courts guard with jealous care the rights and interests of persons whose property is sold under their process, or by their order, mistakes or omissions in notices of sale which are calculated to deter or mislead bidders, or to depreciate the value of the property, or to prevent it from bringing a fair price, will be fatal to the validity of the notice, and also to that of the sale made pursuant thereto." 31 Am.Jur.Judicial Sales, Section 62.

The description of the property to be sold in this case more nearly approximates that of the shed on Lot 4 than it does the four room house on Lot 5. When considered as a notice of sale of the house on Lot 5, the published notice is so clearly inadequate that it amounts to no notice at all and any purported sale of the house on Lot 5 is absolutely void and subject to be attacked, collaterally or otherwise.

The sale was held on August 10, 1951. On August 20 a notice to vacate describing the property as a building located on Lot 4 Block 2 was served on Alma Kuntz. This notice is dated August 18, 1951, and signed by Thomas M. Partridge for the co-partnership.

Mr. Partridge testified that before the notice was served he went out to the house and Mrs. Kuntz was there and that at that time he knew the house was on Lot 5 and knew the difference between Lot 5 and Lot 4. He further testified that about ten days or two weeks later, which would be sometime in the early part of September, 1951, Partridge went out to the house with George Chilton, a prospective buyer. The house was unlocked. He and Chilton went in. They looked around and made a list of the personal property they found in the house. Partridge sold the house to Chilton and gave him a bill of sale.

During the latter part of the summer of 1951 Frank Kuntz was working at Dickinson, North Dakota. About September 1, Mrs. Kuntz joined him in Dickinson and they lived in an apartment for about a month. She then returned to Coleharbor and found that the house had been moved off Lot 5.

We have reached the conclusion that the purported sheriff's sale conveyed no right, title, or interest in the house on Lot 5 to the defendants, George Bellamy Partridge and Thomas M. Partridge, doing business as Dakota Lumber Company; that their entrance upon Lot 5, the sale of the house to George Chilton, and the removal of the house by Chilton pursuant thereto constituted a trespass which under the evidence here presented entitled the plaintiff to recover compensatory damages. The jury, as shown by its verdict and its answer to special interrogatory number 1, determined that the plaintiff suffered no damage by virtue of the severance of the house from the land and the removal. The verdict in this respect is not sustained by the evidence. A new trial must therefore be granted. The order denying the motion for new trial is reversed.

BURKE, SATHRE, JOHNSON and GRIMSON, JJ., concur.